405 So.2d 506 (1981)
STATE of Louisiana
v.
Randy TUCKER.
No. 81-KA-0138.
Supreme Court of Louisiana.
September 28, 1981.
Rehearing Denied November 16, 1981.
*507 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., James E. Stainback, Louise Korns, Asst. Dist. Attys., for plaintiff-appellee.
John Lawrence and Robert deFrancesch, of Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
DIXON, Chief Justice.[*]
Randy Tucker was convicted of armed robbery, R.S. 14:64, following a trial by jury. Prior to sentencing, the state filed a habitual offender bill, to which defendant pleaded not guilty. On the date set for hearing the habitual offender bill, May 11, *508 1979, the state informed the court that it was unable at that time to proceed. Defendant subsequently waived all delays and was sentenced on the armed robbery conviction to sixty years imprisonment at hard labor. On May 31, 1979 the habitual offender hearing was conducted and defendant was found guilty; accordingly, the original sentence was vacated but a sentence for the same term was imposed on the habitual offender bill. We find no merit to defendant's assignments of error.[1]
On the evening of February 28, 1979 Richard Peltier made a deposit at a computerized bank terminal at the corner of Jefferson and Magazine Streets in New Orleans. As Peltier turned to leave the terminal, two strangers approached him. One of the men carried a gun and the unarmed man was later identified as defendant. The men instructed Peltier to "take it all out." He withdrew $50.00 and gave it to them. The man with the gun ordered Peltier to get into his own car, entered it with him, and then told him to drive to Audubon Park. Not far from the scene of the robbery, however, the defendant pulled up behind them in another vehicle and blew its horn. The armed man riding with Peltier ordered him to pull over. He then left Peltier's car, entered the one driven by defendant, and departed.
The victim subsequently stopped a passing state trooper and reported the incident. A radio broadcast was made describing the robbers. A short distance away, the defendant and his accomplice were located on foot by a second state trooper. As the officer closed in on the two, he saw them drop an object which investigation revealed to be a .38 pistol. While they were being detained, the victim was brought to their location where he positively identified them as the men who robbed him. At trial Peltier identified the pistol seized as the one used in the robbery.

Assignment of Error No. 2
By this assignment defendant contends that the trial judge erred in overruling his objection to hearsay testimony by the arresting officer, Trooper Farris, who related that he received a radio report of the armed robbery.
Hearsay testimony is a statement made out of court, offered to show the truth of the matter asserted therein, and thus rests for its value on the credibility of the out-of-court asserter. State v. Toomer, 395 So.2d 1320 (La.1981). Trooper Farris' testimony was not offered to show the truth of the radio report but to show his reason for stopping defendant and his accomplice. His testimony was not hearsay and was properly admitted. See State v. Turner, 392 So.2d 436 (La.1980).
This assignment lacks merit.

Assignment of Error No. 4
By this assignment defendant argues that the habitual offender conviction must be set aside due to the state's failure to prove Boykinization at the predicate plea conviction. The basis for the habitual offender bill was a guilty plea to simple burglary made in January of 1977.
At the habitual offender hearing New Orleans Police Officer William Sabel testified and identified defendant's fingerprints on an arrest register indicating an arrest for simple burglary on December 22, 1976. In addition to the arrest register and the fingerprint card, the state filed into evidence a copy of the burglary bill of information with accompanying minutes and a copy of a plea form executed by the defendant. The plea form bears defendant's initials next to recitations that he has been informed of his rights to trial by jury, to the privilege against self-incrimination, and to confrontation. The form is signed at the bottom by defendant, his counsel, and the trial judge.
*509 To satisfy the requirements of Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), there must be an affirmative showing in the record that the accused at the time he entered his guilty plea knowingly and voluntarily waived his constitutional privilege against self-incrimination, right to trial by jury, and right to confront his accusers.
Recently this court in State v. Dunn, 390 So.2d 525 (La. 1980), suggested that a "plea of guilty form" may be considered in determining whether the defendant was adequately informed of his rights. In Dunn, the trial judge failed to specifically refer to defendant's privilege against self-incrimination, but the representations contained in a plea form initialed and signed by defendant were considered. The trial judge had questioned defendant about his understanding of the plea of guilty form, which contained an express waiver of his privilege against self-incrimination. We held that these facts supported a "sufficient affirmative showing in the record of an express and knowing waiver of defendant's privilege against self-incrimination." State v. Dunn, supra, at 527.
There is a potential for abuse of the accused's constitutional rights in the continued use of printed "waiver of rights" forms, and for this reason their use is to be discouraged. The direct, three-right colloquy between the trial judge and defendant is preferable and should be encouraged.
In the instant case, however, the defendant was represented by counsel when he pleaded guilty to the predicate offense on January 26, 1977. At that time he executed a form in which he admitted his guilt, acknowledged the potential sentence, and indicated that he understood and waived his rights to trial, to confrontation, and to the privilege against self-incrimination. The form also contains a statement to the effect that the plea was uncoerced, and it is initialed seven times and signed once by defendant. The form is also signed by his attorney and the trial judge. The minutes of the guilty plea indicate that the trial judge "questioned the accused under oath regarding his plea of guilty."
We think that the minute entry concerning the abbreviated colloquy along with the well executed "waiver of rights" form signed by defendant, his attorney and the trial judge constitute a sufficient affirmative showing in the record that defendant knowingly and intelligently waived his constitutional privilege against self-incrimination, right to trial by jury, and right to confront his accusers.
This assignment lacks merit.

Assignment of Error No. 5
By this assignment defendant contends that the trial court erred in denying his motion for a new trial. The basis for this motion was that the verdict was contrary to the law and evidence.
The statute under which defendant was convicted provides in pertinent part:
"Armed robbery is the theft of anything of value from the person of another or which is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." R.S. 14:64. (Emphasis added).
Defendant argues that the state failed to prove that anything of value was taken from the victim.
In consideration of the sufficiency of the evidence to support the conviction, the reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Duncan, 390 So.2d 859 (La. 1980).
The victim sufficiently testified to the events surrounding the armed robberythat he was ordered to hand over the $50.00 at gunpoint. He gave a sufficient description of the robbers to the state trooper who put the description over the radio. Defendant and his accomplice were arrested on foot shortly thereafter. Although the money was not recovered, a *510 pistol was found near the scene of arrest. This pistol was identified at trial by the victim as the gun used in the robbery. Defendant's accomplice testified that the robbery was defendant's idea, that defendant drove them to the crime scene, that the victim did indeed give up his money, and that he, the accomplice, gave the money to defendant. A rational trier of fact could have found the essential elements of the crime of armed robbery beyond a reasonable doubt.
This assignment lacks merit.

Assignment of Error No. 6
By this assignment defendant contends that the trial court erred in denying his motion for a new trial based upon newly discovered evidence.
Defendant contends that after trial he discovered a plea bargain arrangement between the state and his accomplice, by which the accomplice would receive a lenient sentence in exchange for his plea and testimony at trial. He argues that had the jury been informed of this matter, a different verdict would have resulted.[2] In any event, he claims he was deprived of an opportunity to effectively cross-examine a key state witness by the too late disclosure of the plea bargain.
At the hearing on the motion for a new trial conducted March 23, April 3 and April 13, 1981, defendant presented testimony indicating that his accomplice did in fact get a lenient sentence for a plea and an agreement to testify for the state. Defendant received a sentence of sixty years at hard labor; his accomplice was sentenced to five years probation.
An examination of the record reveals, however, that defendant or his counsel should have been aware of the accomplice's plea arrangement at trial. This matter was first brought out on direct examination, at which time the accomplice admitted he pleaded guilty and received a sentence of five years probation. On cross-examination defense counsel merely asked defendant's accomplice, "How did you get probation?" The accomplice replied that all he knew was "they gave me five years."
We find that defendant has failed to show that the evidence was not discoverable before or during trial by the exercise of due diligence on his part.
This assignment lacks merit.
For these reasons, the conviction and sentence are affirmed.
NOTES
[*] Judges Grover L. Covington, Luther F. Cole and J. Louis Watkins, Jr. of the First Circuit participated in this decision as Associate Justices Ad Hoc, joined by Chief Justice Dixon and Associate Justices Marcus, Blanche and Lemmon.
[1] Defendant assigned five errors, but having failed to brief or argue Assignments of Error Nos. 1 and 3 we consider them to be abandoned. Defendant also filed a pro se brief urging an additional error which we will treat as Assignment of Error No. 6.
[2] C.Cr.P. 851 provides in pertinent part:

"The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
. . . . .
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty."